UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AGA FISHING CORP.<br><br>v.<br><br>FLAGSHIP GROUP LIMITED and<br>BROWN & BROWN, INC. | CIVIL ACTION NO.: 05-11396 JLT |

**MOTION OF BROWN & BROWN, INC., FOR A PROTECTIVE ORDER**

NOW comes the defendant, Brown & Brown, Inc. ("Brown & Brown") and moves this Honorable Court for a Protective Order limiting the scope of the plaintiff's 30(b)(6) deposition of it. A protective order is necessary to preclude to the plaintiff from inquiring into topics which are not reasonably calculated to lead to the discovery of admissible evidence.

**INTRODUCTION**

This is an action brought by the plaintiff for the defendants' alleged negligence in connection with the plaintiff's purchase of liability insurance for the F/V Georgie J. Essentially, the plaintiff contends that the defendants failed to advise it to purchase sufficient insurance.

On August 7, 2006, the Court allowed the plaintiff's motion to amend its complaint to add counts for misrepresentation, violations of M.G.L. c. 93A and M.G.L. c. 176D, vicarious liability and negligent failure to supervise. While there are additional counts in the plaintiff's complaint, the essential claim is the same: according to the plaintiff, Flagship Group Limited ("Flagship") failed to advise it to purchase more than $1 million in protection and indemnity (P&I) insurance coverage for its boat, the F/V Georgie J. The plaintiff claims that when one of its seamen, Victor Capaldi, suffered serious personal injuries on the Georgie J, it had insufficient

insurance coverage to compensate Mr. Capaldi for its injuries. As a result, according to the plaintiff, the vessel was seized and its fishing license was sold at auction.

Flagship is an insurance brokerage firm and is a wholly-owned subsidiary of Brown & Brown. The essential thrust of the newly added counts is that Flagship conducted business in Massachusetts while it was unlicensed, failed to adequately supervise John Devnew, an insurance broker at the firm, made misrepresentations on its Web site (which no one from the plaintiff ever read), and that Brown & Brown is liable under theories of vicarious liability and failure to supervise for Flagship's wrongful acts. Both Flagship and Brown & Brown deny the allegations in the Amended Complaint.

The plaintiff seeks to conduct a 30(b)(6) deposition of Brown & Brown. *See* Exhibit 1, Notice of Taking 30(b)(6) deposition. Brown & Brown moves herein for a Protective Order limiting the scope of that deposition. Principally, the discovery sought is not reasonably calculated to lead to the discovery of admissible evidence. For example, the plaintiff seeks to inquire into Brown & Brown's "relationship with any financing entity through whom marine insurance policies sold by Flagship's producers were handled..." Information regarding Brown & Brown's relationship with financing entities has nothing to do with the plaintiff's claims and the plaintiff should be precluded from making such inquiry. This is but one example of the plaintiff's intent to discover information which is of no relevance to this case. As is outlined in greater detail below, the Court should issue a protective order precluding the plaintiff from inquiring into the subject matters described, *infra*.

## ARGUMENT

Pursuant to Rule 26(c), this Court should enter an Order limiting the plaintiff's deposition of Brown & Brown. As articulated below, the plaintiff's designated subject areas are not reasonably calculated to lead to the discovery of admissible evidence.

**Designated Area No. 2:**

Brown & Brown's financial relationship with any financing entity through whom marine insurance policies sold by Flagship's producers were handled for purposes of payment of the premiums for marine insurance by commercial fishing vessel owners for the years 2001 – 2003, inclusive.

   a. The extent, if at all, to which Brown & Brown received remuneration from said financing entities for premium payments made by commercial fishing vessel owners for the years 2001 – 2003, inclusive.

**Argument:**

The plaintiff is not entitled to discovery on the subject of Brown & Brown's financial relationship with any financing entity because information regarding that topic is not reasonably calculated to lead to the discovery of admissible evidence. The plaintiff's claims here are simple: either Flagship was negligent, and Brown & Brown is directly or indirectly responsible for said negligence, and/or Flagship and Brown & Brown violated M.G.L. c. 93A and 176D. Brown & Brown's relationship with financing entities has nothing to do with any of these claims.

**Designated Area No. 11:**

The termination of John Devnew's employment with Flagship.

**Argument:**

Brown & Brown has provided all of the material within its file with respect to the termination of Mr. Devnew's employment, which was utterly unrelated to the plaintiff's claim. There is no

rational reason why Brown & Brown must designate an individual to testify with respect to the personnel decisions relating to Mr. Devnew's employment. Importantly, Massachusetts Statutory Law recognizes that employment records contain a high expectation of privacy and the release of information from a personnel file may be a substantial interference with the right to privacy. G.L. c. 214, §1B; See <u>Skelley v. Trustees of the Fessenden School</u>, 1994 WL 928172, 7 Mass. L. rptr. 414, 418, November 10, 1997 (Brassard, J.). This Court should defer to the clearly established public policy in Massachusetts against releasing private records, particularly given where there is no relevance between the personnel records requested in the action at bar to warrant their discovery.

**Designated Area No. 1, 3, 4, 5, 6, 7, 8, 9, 10:**

The above designated areas of testimony essentially relate to Brown & Brown's relationship with Flagship. As indicated below, Brown & Brown is prepared to stipulate to the essential facts regarding its relationship with Flagship. Therefore, discovery on these issues is unnecessary. Given that discovery will have to be conducted out of state, requiring counsel to travel and incur significant expense, there is no reason why this Court should allow the discovery to proceed.

**Designated Area No. 1:**

The extent of supervision and/or control by Brown & Brown of the activities of Flagship's producers in engaging in the solicitation for the sale of marine insurance in Massachusetts to commercial fishing vessel owners for the years 2001 – 2006, inclusive.

**Argument:**

Flagship is a wholly owned subsidiary of Brown & Brown. Following Brown & Brown's acquisition of it, Brown & Brown did not directly supervise the activities of Flagship's producers and is willing to stipulate to that fact. A deposition on this issue is therefore unnecessary and,

4

given Brown & Brown's willingness to enter into the described stipulation, would serve no purpose.

**Designated Area No. 3:**

Brown & Brown's input after its asset purchase of Flagship in 2000 regarding Flagship's representations concerning its level of expertise in the marine insurance business, including but not limited to the level of knowledge and expertise expected by Brown & Brown of Flagship's "producers".

**Argument:**

As noted, following its acquisition of Flagship, Brown & Brown relied upon Flagship's expertise in the marine insurance business and did not provide any input regarding Flagship's representations concerning its level of expertise in the marine insurance business. Flagship operated as a wholly owned subsidiary of Brown & Brown and Brown & Brown offered no input into Flagships representations on the subject matter at issue. Brown & Brown is willing to stipulate to this fact and therefore there is no purpose in engaging in discovery on this issue.

**Designated Area No. 4:**

Brown & Brown's knowledge of

a. the value of scallop fishing permits for the years 2000 – 2004;
b. the earnings of crewmembers of scallop fishing boats for the years 2000 – 2004, inclusive.

**Argument:**

Once again, Brown & Brown, following its acquisition of Flagship, relied upon Flagship's expertise in the marine insurance business. It did not directly supervise Flagship and had no corporate knowledge of the subject matter identified. Brown & Brown is willing to stipulate to these facts and therefore no discovery on this issue is necessary.

**Designated Area No. 5:**

Brown & Brown's knowledge of the scope of Jones Act exposure to Jones Act employers and/or vessel owners/operators insured through it for the years 2000 through 2004, inclusive, in the event a crewmember was injured aboard a vessel whose P&I coverage was purchased through Brown & Brown.

   a. The extent to which that knowledge was imparted to Flagship personnel;
   b. The extent and under what circumstances Brown & Brown directed Flagship's producers to counsel vessel owners/operators to carry more than $1,000,000 P&I coverage.
   c. Under what circumstances Brown & Brown counseled vessel owners/operators insured through it to carry more than $1,000,000 P&I coverage.

**Argument:**

Brown & Brown relied upon Flagship's professional experience in the marine insurance business. Brown & Brown did not impart knowledge or information relative to the marine insurance business to Flagship, nor did it direct Flagship's producers to counsel vessel owners/operators to carry more than $1 million in P & I coverage. Indeed, as a matter of law, neither Brown & Brown nor Flagship owed any duty to provide such counsel. Discovery into this issue is therefore not relevant and not necessary in this case.

**Designated Area No. 6:**

Brown & Brown's knowledge of the origin and content of the website of Flagship as appears in 2006.

**Argument:**

Brown & Brown's knowledge of the Flagship website as it appears in 2006 more than three years after the claimed events is utterly irrelevant to the plaintiff's claim and therefore discovery on this subject matter is not reasonably calculated to lead to the discovery of admissible evidence.

6

**Designated Area No. 7:**

With reference to the statement in the Flagship website, as confirmed by Mr. Devnew at his deposition, to wit, "We systematically and comprehensively examine your maritime exposures, recognizing that protecting your corporate business risks is our primary concern," a person to describe what Brown & Brown, Inc. expected Flagship's producers/accountant executives to do in order to carry out such an analysis for:

    a. the years 2000 through 2003, inclusive; and
    b. currently.

**Argument:**

As previously noted, following its acquisition of Flagship, Brown & Brown relied upon Flagship and did not exercise control over the manner in which Flagship related to its clients with respect to marine insurance. Brown & Brown is willing to stipulate to these facts and therefore discovery on the issue is unnecessary.

**Designated Area No. 8:**

What instruction and/or training was provided for the years 1998 through 2003, inclusive, to Flagship producers/account managers concerning the above quoted statement from its website, producing copies of any and all materials provided to Flagship's personnel to enable them to carry out the task of "systematically and comprehensively examining a customer's/client's maritime exposures, recognizing that protecting the customer's corporate business risks is our [Flagship's] primary concern."

**Argument:**

Following the acquisition of Flagship, Brown & Brown relied upon Flagship's experience in the industry and did not provide additional training to Flagship's producers and account managers

7

relating to marine insurance. Brown & Brown is willing to stipulate to these facts and therefore discovery on the issue is unnecessary.

**Designated Area No.9:**

Brown & Brown's position regarding the need for a "producer" employed by Flagship to be licensed in MA after Brown & Brown decided to close the MA office and terminate Ron Walsh's employment.

**Argument:**

Licensing issues were handled at the local branch level by Flagship. Brown & Brown relied upon Flagship to continue to obtain and maintain appropriate licenses. Brown & Brown is willing to stipulate to these facts.

**Designated Area No. 10:**

If it is Brown & Brown's position that Flagship and/or John Devnew were properly licensed to sell marine insurance in Massachusetts from the years 2001 through 2003, inclusive, a witness to testify and produce documentation upon which said testimony is based.

**Argument:**

Licensing issues were handled at the local branch level by Flagship. Brown & Brown relied upon Flagship to continue to obtain and maintain appropriate licenses. Brown & Brown is willing to stipulate to these facts.

|  |  |
|---|---|
|  | Respectfully submitted,<br>BROWN & BROWN, INC.,<br>By its attorneys,<br>/s/ Patrick J. Dolan<br>Michael J. Stone, BBO# 482060<br>Patrick J. Dolan, BBO#564250<br>PEABODY & ARNOLD LLP<br>30 Rowes Wharf<br>Boston, MA 02110<br>(617) 951-2100 |
| Dated:  August 25, 2006 |  |

**CERTIFICATE OF SERVICE**

I, Patrick J. Dolan, hereby certify that on this 25th day of August, 2006, I served the within document by causing a copy thereof to be sent electronically to the registered participants in this case and paper copies mailed via first class mail, postage prepaid, to the non-registered participants in this case, if any, as identified on the Notice of Electronic Filing.

/s/ Patrick J. Dolan
Patrick J. Dolan

643649_1
14811-91372