**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**AGA FISHING CORP.,**
**Plaintiff**

**v.**

**FLAGSHIP GROUP LIMITED and BROWN & BROWN, INC.,**
**Defendants**

**CIVIL ACTION NO. 05-11396 JLT**

**STATEMENT OF UNDISPUTED MATERIAL FACTS OF THE DEFENDANTS, FLAGSHIP GROUP LIMITED AND BROWN & BROWN, INC., PURSUANT TO LOCAL RULE 56.1**

Pursuant to Local Rule 56.1, the Defendants, Flagship Group Limited ("Flagship") and Brown & Brown, Inc. ("Brown & Brown"), provide the following statement of material facts, which for the purpose of this motion, Flagship and Brown & Brown state are undisputed.

## I. UNDISPUTED MATERIAL FACTS

1. George Jones has been a fisherman and skipper for many years and held an operator's license since sometime in the early 1980's. See George Jones' Deposition Transcript at 12 (Exhibit A).[1]

2. George and Antonette Jones through their corporation, AGA, purchased the GEORGIE J. in 1987 for $500,000, which included a scallop fishing permit. Exhibit A at 11, 15-16.

3. George Jones became captain of the GEORGIE J. Exhibit A at 13.

[1] The supporting documents are attached to the Pastori Affidavit submitted herewith.

4. Upon purchasing the GEORGIE J., George Jones elected to continue the same insurance coverage that the previous owner had on the vessel which was $350,000 in hull insurance and $1 million for P&I coverage. Exhibit A at 42-43.

5. The broker of the insurance was Neptune and George Jones' contact was Ronald Walsh. Exhibit A at 42.

6. Jones testified that he renewed the policy at the end of every year. Exhibit A at 60.

7. He never talked to Walsh about how much P&I coverage the GEORGIE J. should carry, instead he just continued the $1 million in coverage unchanged year-to-year. Exhibit A at 61.

8. The Jones purchased a second scalloping vessel, F/V KELLY JEAN, in 1999 or 2000. Exhibit A at 45.

9. The Jones incorporated another business entity, Brian Fisheries, Inc., to hold title to that boat, which is a common mechanism for boat owners to minimize their exposure. Exhibit A at 105.

10. The Jones went through another broker for the marine insurance on the KELLY JEAN. Exhibit A at 46.

11. The hull insurance on the Kelly Jean was $50,000 or $60,000 and the P&I was $500,000 ($500,000 less than the P&I on the GEORGIE J.). See Debra Fernandez Deposition Exhibit 2, at DF 22 (Exhibit B).

12. George Jones switched brokers on the GEORGIE J. at some point and went to Bill Hart, who was working with Mariner Insurance. Exhibit A at 44.

13. George Jones gave Bill Hart a copy of the then current marine policy on the GEORGIE J. and that was the insurance that Bill Hart procured. Exhibit A at 64.

14. George Jones never had a discussion with Bill Hart about the amount of P&I insurance he should have on the GEORGIE J. Exhibit A at 70.

15. Bill Hart never made any recommendations for insurance limits and George Jones never asked. Exhibit A at 20.

16. In 1999, George Jones switched brokers again, this time to Flagship in order to save a few thousand dollars in premium. Exhibit A at 71.

17. By that time, Ronald Walsh had become an employee of Flagship. Exhibit A at 71.

18. The Joneses did not rely on the Flagship website to select brokers and in fact, the Joneses did not even own a computer at that time. See Antonette Jones' Deposition Transcript at 66-67 (Exhibit C).

19. George Jones continued the same P&I insurance coverage and limits at Flagship as he did with Neptune and Mariners. Exhibit A at 129. He never sought to change the $1 million in P&I coverage because that is what the prior owner had on the vessel. Exhibit A at 88.

20. Each year upon renewal, Flagship informed AGA in writing that higher limits were available upon request and AGA never asked for higher P&I insurance limits. See, e.g., Jones Deposition Exhibits 6, 10, and 12 (Exhibit D).

21. In November of 2003, during the relevant policy time period with Flagship, Victor Capaldi, a crew member of the GEORGIE J sustained serious injuries aboard the vessel. Exhibit A at 158 – 63.

22. Purportedly, the value of Capaldi's injuries was in excess of the $1 million P&I policy limit and AGA contends that as a result, its vessel and permit were seized and sold and it suffered other damages. See U.S. Marshal's Bill of Sale (Exhibit E); Approval of Settlement Agreement (Exhibit F).

23. At no time from 1999 to 2003, did anyone from AGA request higher P&I coverage from Flagship. Exhibit A at 72, 99.

24. No one from AGA had any discussions with anyone from Flagship about how much liability coverage AGA should have on the vessel. Exhibit A at 114.

25. No one from Flagship ever told George Jones or anyone from AGA that AGA had sufficient coverage. Exhibit A at 129.

26. AGA takes the simple position that Flagship should have advised it to "up" its P&I insurance to $10 million. Exhibit A at 151.

27. Devnew was a licensed insurance broker in Virginia and held a non-resident Massachusetts producers license during the relevant period of time. See Exhibit G at 11, 58; Devnew's Massachusetts Producers License[2] (Exhibit H).

28. AGA cannot establish that contributed to its alleged injury. Furthermore, there is no evidence that the Joneses discussed Devnew's license with him or relied on the license in selecting a broker. They came to Flagship based upon the fact that they could reduce their marine insurance premium. Exhibit A at 71.

[2] The license misspelled Devnew's name as "Dernew" rather than "Devnew."

Respectfully submitted,

FLAGSHIP GROUP LIMITED and
BROWN & BROWN, INC.,

By their attorneys,

/s/ Terri L. Pastori

Michael J. Stone, Esquire, BBO#482060
Terri L. Pastori, Esquire, BBO#635323
PEABODY & ARNOLD LLP
30 Rowes Wharf
Boston, MA 02110
(617) 951-2100

**CERTIFICATE OF SERVICE**

I, Terri L. Pastori, hereby certify that on this 29th day of May 2007, the foregoing document was served on counsel for the plaintiff, Joseph E. Abromovitz, Esquire, Law Offices of Joseph G. Abromovitz, P.C., 858 Washington Street, 3rd Floor, Dedham, MA 02026, by electronic mail.

/s/ Terri L. Pastori
Terri L. Pastori