UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AGA FISHING CORP., <br>            Plaintiff <br><br> v. <br><br> FLAGSHIP GROUP LIMITED and <br> BROWN & BROWN, INC., <br>            Defendants | CIVIL ACTION NO. 05-11396 JLT |

**MOTION OF THE DEFENDANTS, FLAGSHIP GROUP LIMITED AND BROWN & BROWN, INC., TO STRIKE AFFIDAVIT OF RONALD WALSH**

In opposition to the Motion of the Defendants, Flagship Group Ltd. ("Flagship") and Brown & Brown, Inc. ("Brown & Brown") for Summary Judgment, the plaintiff, AGA Fishing Corp. ("AGA") submitted an affidavit of Ronald Walsh that contradicts his sworn deposition testimony, and offers expert opinion and speculation. As a result, Flagship and Brown & Brown seek to have the affidavit stricken.

**I.     BACKGROUND**

AGA claims that Flagship, its marine insurance broker, failed to advise it as to the proper limit of Protection & Indemnity insurance ("P&I insurance"), and as a result AGA claims that it lost its vessel F/V GEORGIE J. and fishing permit because it did not have sufficient P&I insurance to cover a personal injury claim by a crew member. As explained in Flagship and Brown & Brown's Memorandum of Law filed in support of their motion for summary judgment, there are no genuine issues of material fact and they are entitled to judgment as a matter of law on all counts in the Complaint. AGA's negligence based claims (Counts I and II) fail because Flagship did not have a duty to provide advice to AGA concerning the limits of its P&I insurance

coverage. Additionally, summary judgment should enter on the negligence counts because the damages AGA seeks are barred by the economic loss doctrine and are duplicative. Flagship is entitled to summary judgment on AGA's claim for misrepresentation (Count III) and alleged violations of Massachusetts General Laws Chapter 93A (Count IV) because Flagship's broker was a licensed producer in Massachusetts during the relevant timeframe and there is no causal connection between the licensing and any harm to AGA. AGA's claim for alleged violations of Chapter 176D (Count V) fails because AGA does not have a private right of action under Chapter 176D. Finally, Brown & Brown is entitled to summary judgment on AGA's claims for vicarious liability and negligent supervision (Count VI and VII) because AGA's underlying claims against Flagship fail.

## II.     ARGUMENT

### A.     AGA Submitted An Affidavit From Ronald Walsh That Contradicts His Sworn Deposition Testimony In An Effort To Avoid Summary Judgment.

In opposing the motion for summary judgment, AGA submitted an affidavit from Ronald Walsh, AGA's former insurance broker. (Exhibit A attached). Walsh was a broker for Flagship and his employment was terminated when Flagship closed its New Bedford office. Walsh concedes that his affidavit contradicts his deposition testimony and suggests that this Court should overlook the inconsistencies because he was tired at his deposition. Walsh Affidavit ¶ 2. He also asks this Court to ignore the fact that at no time since November 2006 until AGA had to oppose Flagship and Brown & Brown motion for summary judgment, did Walsh make any attempt whatsoever to correct his deposition testimony. Walsh Affidavit ¶ 2. Only after Flagship and Brown & Brown moved for summary judgment did Walsh realize that he had "erroneously" testified at his deposition concerning AGA's reliance on him. It is bedrock law in this circuit that a witness cannot create an issue of fact by submitting an affidavit in opposition to

a summary judgment motion that contradicts the witness's prior deposition testimony. Morales v. A.C. Orssleff's EFTF, 246 F.3d 32, 35 (1st Cir. 2001). As such, Walsh's affidavit should be stricken.

      **B.**    **Walsh's Affidavit Offers Expert Opinion And Should Be Stricken Because AGA Has Not Designated Him As An Expert Witness.**

AGA made its expert designation of Paul Amoruso in March 2007. Based upon its disclosure, the Court set May 21, 2007 as the deadline for Flagship and Brown & Brown to designate their expert, which they did. Without ever designating Walsh as an expert, AGA now attempts to circumvent the expert disclosure requirements and submit his expert opinion on the duties of brokers and the adequacy of coverage. See Walsh Affidavit ¶¶ 5, 6. As AGA failed to designate Walsh as an expert, his "expert" testimony should be stricken.

      **C.**    **Paragraphs 5 And 6 Of Walsh's Affidavit Are Pure Speculation And Should Be Stricken.**

The cardinal rule of an affidavit submitted in opposition to a summary judgment motion is that it must be based upon personal knowledge and set forth facts that would be admissible into evidence. Fed. R. Civ. P. 56(c). In Paragraph 5 of Walsh's affidavit, he states as follows: "While I was no longer in the marine insurance industry I was aware that starting in or about 2001 there had been a major increase in the revenues being generated by commercial scallop fishing vessels out of New Bedford and the value of fishing permits. Had I still been in the industry selling marine insurance I would have advised commercial scallop fishing vessel owners, such as AGA Fishing Corporation, of the need to increase their P&I coverage to at least $5,000,000 because of their potential exposure in the event of a serious injury occurring aboard a vessel, much of which is impacted by the earnings of crewmembers aboard the vessels." Walsh Affidavit ¶ 5. He continues, stating that "There is no doubt in my mind, based upon my

3

relationship with George and Antoinette Jones, that Had I informed AGA Fishing Corporation that they should carry at least $5,000,000 P&I coverage for their fishing vessel the GEORGIE J. that they would have followed my recommendation." Walsh's statements in Paragraphs 5 and 6 are based upon pure conjecture and speculation and are inadmissible.  As such, they should be stricken from his affidavit.

### III.  CONCLUSION

AGA submitted an affidavit from Walsh in opposition to Flagship and Brown & Brown's motion for summary judgment.  In addition to contradicting Walsh's own sworn deposition testimony, the affidavit offers expert opinion and speculation both of which are inadmissible.  As a result the affidavit should be stricken.

Respectfully submitted,

FLAGSHIP GROUP LIMITED and
BROWN & BROWN, INC.,

By their attorneys,

  /s/ Michael J. Stone
Michael J. Stone, Esq., BBO # 482060
Terri L. Pastori, Esq., BBO #635323
Peabody & Arnold, LLP
30 Rowes Wharf
Boston, MA 02110
(617) 951-2041

Dated:  July 2, 2007

4

## **CERTIFICATION**

I certify pursuant to Local Rule 7.1 that counsel for the parties conferred on July 2, 2007 and attempted in good faith to narrow or resolve the issues raised in this motion and were unable to do so.

                                          /s/ Michael J. Stone
                                          Michael J. Stone

## CERTIFICATE OF SERVICE

     I, Michael J. Stone, hereby certify that on this 2nd day of July 2007, the foregoing document was served on counsel for the plaintiff, Joseph E. Abromovitz, Esquire, Law Offices of Joseph G. Abromovitz, P.C., 858 Washington Street, 3rd Floor, Dedham, MA  02026, by electronic mail.

                                                /s/ Michael J. Stone
                                                Michael J. Stone

PABOS2:TPASTOR:661968_1
9999-99999

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-11396 JLT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
AGA FISHING CORP.                    \*
                                     \*
v.                                   \*
                                     \*
FLAGSHIP GROUP LIMITED and           \*
BROWN & BROWN, INC.                  \*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**AFFIDAVIT OF RONALD J. WALSH**

I, Ronald J. Walsh, do attest and swear that the following is true and correct to the best of my knowledge, information and belief.

(1)     That when I first met George and Antoinette Jones in a professional capacity as a broker of marine insurance in the 1980's it became clear to me that they were very unsophisticated in the field of marine insurance. As I testified at my deposition they just did not understand insurance coverage. This was true up to and including my last dealings with them prior to the termination of my employment with Flagship Group, Limited.

(2)     When I testified at my deposition that I didn't remember whether the Jones' relied upon me for advice concerning insurance coverage that was inaccurate. The question was asked of me several hours into the course of my deposition and I was tired. I do remember that, in fact, they did rely upon me for advice, more-so than most if not all of the other clients that I serviced. I did not make this change to my deposition transcript for the simple reason that when the transcript was received by me to review I

was in Florida and more than thirty days passed and I understood that I could not correct the transcript more than 30 days after I received it.

(3)    During the period of time that I was placing marine insurance coverage for AGA both with Neptune Mutual and later with Flagship, because of the factors addressed in my deposition, it was my opinion, certainly up to and including the last policy that I placed for them thru Flagship, that $1,000,000 P&I coverage was adequate. If I had not believed $1,000,000 P&I coverage to have been adequate I would have advised the Jones (and all of my other clients) to increase their coverages. I thought that to have been part of my job as a marine insurance broker/producer.

(4)    When I testified at my deposition that went forward on or about November 29, 2006, that I had not spoken with Attorney Abromovitz, the attorney for AGA Fishing Corporation, prior to the deposition I had forgotten that he and I did speak at length in early 2005. We spoke at length concerning my relationship with the Mr. & Mrs. Jones, and the factors that I would consider when seeking to place coverage for them and the other vessel owners that I serviced. I told Attorney Abromovitz the same things to which I testified at my deposition concerning the Jones', their knowledge of insurance, and the factors that were considered by me and other competent marine insurance brokers/producers when a broker/producer of marine insurance was assessing the adequacy of insurance coverage and advising clients, all about which I testified at my deposition.

(5)    Having lived in New Bedford most of my life, worked in the fishing industry and knowledgeable about what was happening with the scallop fishing industry over

the years it was clear to me that by 2001 there had been a major upswing in the profitability to a commercial scallop fishing vessel owner, and the captains and crews working those boats. While I was no longer in the marine insurance industry I was aware that starting in or about 2001 there had been a major increase in the revenues being generated by commercial scallop fishing vessels out of New Bedford and the value of fishing permits. Had I still been in the industry selling marine insurance I would have advised commercial scallop fishing vessel owners, such as AGA Fishing Corporation, of the need to increase their P&I coverage to at least $5,000,000 because of their potential exposure in the event of a serious injury occurring aboard a vessel, much of which is impacted by the earnings of crewmembers aboard the vessels.

(6)  I was well aware during the period of time that I was selling marine insurance that the cost of increasing P&I coverage from $1,000,000 to $5,000,000 was relatively minimal. There is no doubt in my mind, based upon my relationship with George and Antoinette Jones, that had I informed AGA Fishing Corporation that they should carry at least $5,000,000 P&I coverage for their fishing vessel the GEORGIE J that they would have followed my recommendation.

Dated: June 7, 2007

_Ronald Walsh_
Ronald Walsh