UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AGA FISHING GROUP LIMITED, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | *   Civil Action No. 05-11396-JLT |
| | * |
| FLAGSHIP GROUP LIMITED and | * |
| BROWN & BROWN, INC., | * |
| | * |
| Defendants. | * |

MEMORANDUM

August 6, 2007

TAURO, J.

Plaintiff, AGA Fishing Group Limited, was forced to sell its assets, a scalloping boat and permit, when the cost of settling a personal injury case brought before this court exceeded the limits of Plaintiff's insurance coverage. Plaintiff brings this action against its insurance company, Defendant Flagship Group Limited, and its parent company, Defendant Brown & Brown, Inc., to recover damages for this loss.

**Background**

The Summary Judgment record establishes the following undisputed facts:

George and Antonette Jones formed a corporation, AGA Fishing, and purchased the Fishing Vessel Georgie J and a scallop fishing permit in 1987. Plaintiff operated the vessel out of New Bedford, MA. Plaintiff continued the same one million dollar Protection and Indemnity coverage on the boat that the previous owners had in place, renewing the policy every year. Plaintiff's insurance at the time was through Ronald Walsh, with the Neptune insurance agency. "At some point" Plaintiff switched coverage from "Neptune" to "Mariner Insurance," and enlisted

with another agent. George Jones gave the new broker a copy of the old policy, and obtained identical insurance from the new broker. In 1999, Plaintiff switched insurance brokers to Defendant Flagship, where Ronald Walsh was now an employee.

Plaintiff continued the same coverage, making the switch to Flagship because the "premium was cheaper."[1] The Joneses did not make this decision based on Defendant's website or other promotional material, which stated that Defendant Flagship would "systematically and comprehensively examine your potential maritime exposure, recognizing that protecting your corporate business tasks is our primary concern."[2] There is evidence that Defendant Flagship represented it had "unequaled expertise and experience in the fishing vessel industry,"[3] but there is no evidence that Plaintiff was aware of these representations or relied on them. To the contrary, as stated above, the evidence is that Plaintiff switched to Defendant Flagship, seeking identical protection at reduced rates.

Plaintiff's agent, Walsh, recognized that the Joneses were unsophisticated, and among the "most naive" customers with which he dealt.[4] In his affidavit, which Defendants move to strike, Walsh also says that the Joneses relied on Walsh for advice and guidance. In 2001, Defendant Brown & Brown acquired Defendant Flagship, closing the New Bedford office and terminating Ronald Walsh. Plaintiff stayed with Flagship, switching from Walsh to John Devnew, after

---

[1] Dep. of George Jones, Paper #44-2, 71:4-72:16.

[2] Flagship Website, Paper #49-8; See also Dep. of Antonette Jones, Paper #44-4, 66:15-67:4.

[3] Dep. of John Devnew, Paper #49-2, 41:17-42:5.

[4] Depo. of Walsh, Paper #49-7, 124:4-7.

making sure that Flagship would "continue to take care of [Plaintiff's] insurance interests."[5] Devnew also understood the Joneses to be unsophisticated.

Defendant Flagship's annual offer of renewal form made clear that higher limits were available upon request. Plaintiff never asked for increased protection, and neither Walsh nor Devnew recommended it.

Plaintiff contends that, starting in 2001, the wage of scallop fisherman increased dramatically, thereby increasing the lost wages component of any maritime tort claim and Plaintiff's exposure. Although other agents testify that they believed it was their responsibility to recommend a coverage increase when necessary, and although other boats insured with other brokers carried $5 million in coverage, Devnew never recommended increasing coverage. Plaintiff alleges Devnew knew very little about the actual insurance needs of scallopers. Plaintiff avers it would have increased its coverage if Defendant had suggested it. If Plaintiff had increased its coverage to $5 million, Plaintiff would not have lost its fishing vessel and permit when sued by one of their sailors for a 2003 incident that left the sailor paralyzed. The boat and permit sold for $1.7 million at auction conducted under authority of the U.S. Marshal, under orders of this court.

Plaintiff advances seven counts: (1) that Defendant Flagship's failure to properly advise Plaintiff of the need for protection and indemnity insurance coverage over $1,000,000 constituted negligence and, as a result, Plaintiff has sustained the loss of all anticipated business revenues; that furthermore Flagship engaged in (2) negligent misrepresentation and (3) intentional

---

[5] Dep. of George Jones, Paper #49-5, 94:14-17.

misrepresentation, (4) that Flagship violated M.G.L. ch. 93A and (5) M.G.L. ch. 176D,[6] (6) because Defendant Flagship Group Limited is a duly authorized agent of Defendant Brown & Brown, Inc., Defendant Brown & Brown, Inc. is vicariously liable for Plaintiff's damages that resulted from Defendant Flagship's actions, and (7) that Brown & Brown was negligent in its failure to supervise Flagship.  Plaintiff's counts two through five are based on Plaintiff's claims that Defendant Flagship represented that it was an expert on maritime insurance, when in fact its agent, Devnew, was not knowledgeable of the risks faced by scallopers.[7]  Plaintiff demands $4.2 million to cover the lost boat, lost permits, and lost profits.

**Discussion**

"There is no general duty of an insurance agent to ensure that the insurance policies procured by him provide coverage that is adequate for the needs of the insured."[8]  "The relationship between an insurance broker and the insured is not normally thought to be fiduciary in nature, absent special circumstances of assertion, representation and reliance."[9]  "'An expanded agency agreement, arrangement or relationship, sufficient to require a greater duty from the agent than the general duty, generally exists when the agent holds himself out as an insurance specialist,

---

[6] As Plaintiff acknowledges, there is no independent cause of action for a violation of ch. 176D; instead, the court may consider such a violation in assessing an unfair and deceptive trade practice under ch. 93A.  RLI Ins. Co. v. Wood Recycling, Inc., No. 03-10196, 2006 U.S. Dist. LEXIS 30596, at *12-14 (D. Mass. March 30, 2006).

[7] Initially, Plaintiff also claimed that Devnew was not properly licensed in Massachusetts, but Plaintiff has dropped those claims.

[8] Martinonis v. Utica Nat'l Ins. Group, 840 N.E.2d 994, 996 (Mass. App. Ct. 2006)

[9] Baldwin Crane & Equip. Corp. v. Riley & Rielly Ins. Agency, 687 N.E.2d 1267, 1269 (Mass. App. Ct. 1997) (internal citations and quotations omitted).

consultant or counselor and is receiving compensation for consultation and advice apart from premiums paid by the insured.'"[10] "But the absence of separate compensation does not mean that special circumstances giving rise to a duty of care did not exist."[11]

In Martinois, the Massachusetts Appeals Court held a special relationship did exist where there was a long insured/insurer relationship, where the Plaintiff relied on the Defendant, and where the Defendant had made specific assurances in past occasions that the insurance was adequate. There are no such specific representations here. In RLI Insurance Company, Judge Zobel found that no jury could find a special relationship where a corporation sued its broker for giving it a policy with a term that eventually served as a potential bar to recovery. Judge Zobel rejected arguments that advertisements holding the broker out as an expert created a special consultant relationship.[12] Similarly, here, Defendant Flagship made general statements regarding its expertise, but there is no evidence Plaintiff relied on these statements.

No other facts of this case create "special circumstances." Though the Joneses may have been unsophisticated, they never abdicated their responsibility in selecting the proper amount of insurance by asking Defendant to assume that responsibility. Though Defendant Flagship told Plaintiff it would see to its insurance needs, Plaintiff never received a representation that any broker would guarantee that their insurance was adequate.

Plaintiff argues that the statement on Defendant Flagship's website that it would assess its

---

[10] Id. (quoting Sandbulte v. Farm Bureau Mut. Ins. Co., 343 N.W.2d 457, 464 (Iowa 1984)).

[11] Martinonis, 840 N.E.2d at 997.

[12] RLI Ins. Co., 2006 U.S. Dist. LEXIS 30596, at *26-29.

clients' needs creates a duty for Defendant to do so.  In support of this position, Plaintiff points to cases where courts have imposed tort duties based on specific contractual language.[13]  But here there was no contract obligating Defendant to a higher duty.  In fact, the evidence is that Plaintiff never looked at Defendant's website, let alone relied on it in a way that would support imposing a quasi-contractual duty.

The fact that Walsh believed that the Joneses relied on him and that Walsh would have recommended increasing coverage is not evidence sufficient to create "special circumstances." Many insurance agents may concern themselves with their needs of their clients, or attempt to provide service above the bare level required by tort law.  But this court holds that such an unexpressed belief or goal, absent specific agreement, representation, or reliance, does not, as a matter of law, create the kind of "special circumstances" which would change the applicable legal duty.  Because of this, Walsh's affidavit is not sufficient to defeat summary judgment, and Defendants' Motion to Strike Affidavit of Ronald Walsh is DENIED AS MOOT.

In sum, though Plaintiff can point to facts showing that Defendant Flagship could have done more for Plaintiff, it can identify no specific representation or agreement that shows that Plaintiff came to reasonably rely on Defendant Flagship to advise Plaintiff as to its insurance needs.  Instead, the evidence shows that Plaintiff never asked Defendant Flagship for its advice, but instead obtained insurance through Defendant Flagship because of its reduced price.  Because no jury could find the "special circumstances" of "assertion, representation and reliance" that would support departing from the normal rule that Defendant was not under a duty to advise

---

[13] See, e.g., Corsetti v. Stone, 483 N.E. 2d 793, 799, n.8 (Mass. 1985).

Plaintiff to increase its coverage, Defendant's Motion for Summary Judgment is ALLOWED as to count one.

As to the misrepresentations claims, Plaintiff argues that Defendants should be held liable for representations that Flagship possess maritime insurance expertise, when in fact it hired agents like Devnew, who allegedly knew very little about the relevant market. As previously explained, deposition testimony reveals the Joneses did not rely on these representations, but instead switched to Flagship to obtain reduced premiums. Accordingly, even if Defendant's misrepresentations were material misrepresentations (and not simple puffery), there is no causal connection between those alleged misrepresentations and the relief requested in the complaint.[14] Accordingly, Summary Judgment shall enter for the Defendants on counts two through five.

With no counts left against Flagship, counts six and seven against Brown & Brown can be dismissed.

**Conclusion**

Because Defendant Flagship did not owe Plaintiff a heightened duty, and because Plaintiff did not rely on Defendant Flagship's alleged representations regarding its expertise, Defendants' Motion for Summary Judgment is ALLOWED.

An order has issued.

    /s/ Joseph L. Tauro
United States District Judge

---

[14] Causation is a required element of all of Plaintiff's claims. See Massachusetts Laborers' Health & Welfare Fund, by and Through its Trustees v. Philip Morris, Inc., 62 F. Supp. 2d 236, 242 n.3 (D. Mass. 1999).