UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-11396 JLT

*************************************************

AGA FISHING CORP.          *
                           *
v.                         *
                           *
FLAGSHIP GROUP LIMITED and *
BROWN & BROWN, INC.        *
*************************************************

PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION PER Fed.R.Civ.P. 59(e) FOR RECONSIDERATION OF
AND/OR
PER Fed.R.Civ.P. 60 (b) TO VACATE JUDGMENT FOR THE DEFENDANTS
ENTERED ON AUGUST 8, 2007 [1]

In allowance of Flagship's summary judgment motion this Court based its ruling on a finding that Plaintiff had not asserted a "specific representation" that would show there was a "special relationship" between AGA and Flagship as a broker/producer of marine insurance. Specifically the Court noted as follows:

> Though the Joneses may have been unsophisticated, they never abdicated their responsibility in selecting the proper amount of insurance by asking the Defendant to assume that responsibility. Though Defendant Flagship told Plaintiff it would see to its insurance needs, Plaintiff never received a representation that any broker would guarantee that their insurance was adequate.

Respectfully, this ruling stands on its head the relationship between Flagship and AGA, disregards the significance of Flagship claiming expertise and specialization in the field of marine insurance and ignores

---

[1] All exhibit references are to the materials submitted as part of AGA's memorandum in opposition to Defendants' Motion for Summary Judgment.

1

Flagship's admitted business practices in soliciting and selling marine insurance to vessel owners that chose to insure through its agency.

Flagship brokers, including John Devnew, the broker servicing the AGA account at the time of the sale of the P&I policy in effect at the time of the seaman's shipboard accident that resulted in the loss of AGA's vessel, fishing permit and business, confirmed at deposition that the company practice at all times material hereto was to ". . systematically and comprehensively examine . . . [a vessel owner's] maritime exposures, recognizing that protecting your corporate business risks is our primary concern". (Exh. 1, Devnew Depo., pp. 42-43; Exh. 8, O'Sullivan Depo., pp. 32-33). Flagship's brokers acknowledged that they would advise a fishing vessel owner to increase liability coverage if the requested policy limits were too low. (Exh. 8, O'Sullivan Depo. pp. 31-32) and (Walsh Depo. p. 73). And, most significantly, Ron Walsh, an experienced marine insurance broker with whom AGA had previously dealt and who was the first Flagship broker that AGA worked with after Flagship opened its New Bedford office attested that, **when he worked for Flagship,** he knew that AGA's principals, George and Antonette Jones, were relying upon him for coverage advice. (Exh. 5, Walsh Affidavit). Walsh was not compensated for his advice. (Exh. 6, Walsh Depo, p. 73).

Although the Jones did not see the representations on Flagship's website, it was the Jones' understanding that Walsh and Devnew were marine insurance specialists and would provide advice as to AGA's marine insurance needs.

2

(Exhs. 13 & 14). If the Jones had seen Flagship's website it would not have changed Flagship's duty of care and it would not have changed the Jones' reliance on Flagship to provide coverage advice.

In determining that AGA did not rely on Flagship to provide coverage advice, this Court focused on the fact the AGA hired Flagship because it offered cheaper premiums. However, this fact does not mean it was the only reason AGA used Flagship. In fact, paragraph 11 of George Jones' Affidavit (Exh. 13), states as follows:

> (11)   In the late 90s I became aware that Ron Walsh had become employed by Flagship. As I always liked Ron Walsh and felt that he always properly advised us and assisted us we transferred the insurance back to Flagship. We still carried $1,000,000 P&I coverage. We assumed that this was enough insurance. We always believed that if it was not enough insurance coverage Ron Walsh would advise us to increase it and we would do so. He never did. [2]

Moreover, when Mr. Jones, who expressed concern that Flagship's closing its New Bedford office and terminating Mr. Walsh' employment could adversely affect AGA, it was in reliance on representations of Walsh and Devnew that AGA stayed with Flagship. (Exh. 13, Affidavit of George Jones). (See also, Exh. 4, George Jones Depo., pp. 110-114; Exh. 6, Walsh Depo., pp. 123-124); Exh. 13, Affidavit of George Jones, Exh. 14 , Affidavit of Antonette Jones).

Since the evidence would support a finding that there was an agency relationship beyond that of an ordinary broker/client, evidence of a "specific

---

[2]   Per Walsh' Affidavit, Exh. 5, during the period of time he was working for Flagship and servicing the AGA account he was of the opinion that $1,000,000 P&I coverage was adequate.

representation" is not required to show a duty to advise. Depending on the nature of the insured/broker relationship, express assurances are not required to invoke an insurance broker's duty of care. See generally, *Construction Planners, Inc. v. Dobax Ins. Agency, Inc.*, 31 Mass.App.Ct. 672, 583 N.E.2d 255 (1991) (when an insurance broker who holds himself out as knowledgeable in the field of construction industry insurance fails to advise his construction company client that, in the absence of specific direction, he was not going to renew a builder's risk policy even though he knew that the client construction company had yet to complete the project, the broker is liable for the loss of insurance coverage that arose when the policy was not renewed.) Also see, *Capital Site Mgmt. Assocs. v. Inland Underwriters Ins. Agency, Ltd.*, 61 Mass.App.Ct. 14, 17-18, 806 N.E.2d 959 (2004) (though the parties did not specifically discuss the procurement of coverage on vacant properties, broker's failure to ascertain the occupancy of the properties fell below the standard of care the broker owed to its client.)

The Court's ruling also overlooks the following aspects of Massachusetts law. "A successful G.L.c. 93A action based on deceptive acts or practices does not require proof that a plaintiff relied on the representation ..." *Aspinall v. Philip Morris Cos., Inc.*, 442 Mass. 381, 394 (2004). Here Flagship (and it's parent company, Brown and Brown) sought to gain an competitive advantage over competitors by touting Flagship's specialization and expertise in marine insurance, yet when expected to honor those higher standards, they claim that they should only be held to the standard of an ordinary insurance producer.

4

As acknowledged by Walsh, Mr. & Mrs. Jones were unsophisticated in the field of marine insurance and simply did not understand insurance. (Exh. 6, Walsh Affidavit). And as testified to by John Devnew at his deposition, he knew early on in his relationship with AGA that George Jones was a simple, unsophisticated man who knew little of legal matters (Exh. 1, Devnew depo., pp. 37, 38, 40). Mr. & Mrs. Jones relied upon all their insurance brokers for insurance advice. (Exh. 13 & 14).

While Flagship could argue that AGA "abdicated" its responsibility to make certain that it was adequately insured or to make clear to Flagship that AGA was looking to Flagship to provide advice as to what was needed to adequately insure its vessel, the issue of the Jones' failure to make a specific inquiry to Flagship as to the adequacy of AGA's insurance coverage would be a question of comparative negligence for the jury to determine, not the death knell to AGA's causes of action against Flagship.[3]

In its memorandum explaining the bases for its allowance of Flagship's summary judgment motion this Court also noted:

> Many insurance agents may concern themselves with their needs of their client, or attempt to provide services above the bare level required by tort law. But this court holds that such an unexpressed belief or goal, absent specific agreement, representation, or reliance, does not, as a matter of law, create the kind of "special circumstances" which change the applicable legal duty.

---

[3] See, *Construction Planners, Inc. v. Dobax Ins. Agency, Inc.*, 31 Mass.App.Ct. 672, 676, 583 N.E.2d 255 (1991).

Respectfully, this statement fails to consider the uncontested facts in the case *sub judice*.

Without question "special circumstances" are *prima facie* proven by Flagship being a marine insurance specialist servicing fishing vessel owners with little understanding of their insurance needs, like the Jones. All of Flagship's brokers touted Flagship's expertise in the field of marine insurance. (Exh. 1, Depo. of John Devnew, pp. 41-42; Exh. 2, Depo. of Christopher Burns, p. 85; Exh. 3, Depo. of Stephen A. Johnsen, p. 26). Devnew went so far as to describe it as "unequaled expertise and experience in the fishing vessel industry." (Exh. 1, Devnew Depo. pp. 41-42).

Combined with Flagship's admitted business practice of "systematically and comprehensively" taking steps to make sure that a fishing vessel insured's corporate business risks are protected, Flagship cannot and should not be viewed in the same light as your average neighborhood insurance agency selling auto, homeowners and life insurance as this court's holding in the case *sub judice* indicating. As stated in *Bicknell, Inc. v. Havlin*, 9 Mass.App.Ct. 497, 500-501, 402 N.E.2d 116 (1980).

> The nature and extent of the duty of care owed by an independent insurance agent to his client depends in part, at least, upon the degree of skill which he represents himself to possess. 'If he holds himself out to the world as possessing certain skill, or if his business is such as to carry with it an implication that he possesses particular skill in effecting insurances, as in [the] case of an insurance broker, then his principal is justified in relying upon the knowledge which he professes to possess, and he is bound to

exercise the skill and to use the knowledge which the business requires.' 3 Couch, Insurance § 25:37[,] at 335-336 (2d ed.1960)[4].

As noted by Plaintiff's liability expert, Paul Amoruso (Exh. 10), because of the unique nature of the laws that affect tort actions and remedies marine insurance is a highly specialized field:

> Marine Insurance, particularly protection and indemnity coverage, is complex and very different from virtually any other liability insurance available in the United States. This is because, unlike commercial liability insurance or, more traditionally workers compensation insurance for land-based employers, a seaman working aboard a vessel has the right to sue his employer in tort for a full measure of damages while working in one of the most hazardous occupations in the modern era. The level of proof necessary in order to hold a vessel owner legally responsible in the event of an injury to a seaman is remarkably low, while, at the same time, the potential exposure to the vessel owner is exceptionally large in the event of a serious, disabling injury to a young commercial fisherman. Accordingly, it is imperative that a vessel owner carry adequate coverage so that the vessel owner doesn't lose its vessel and perhaps its business in the event of a serious injury to a seaman working aboard its vessel. (Exh. 10, pp. 8-9)

Unfortunately, in allowing Defendants' summary judgment motion the Court appears to have abdicated the factfinder's function and totally disregarded and or rejected Plaintiff's expert's opinion and afforded it no weight whatsoever.

---

[4] Also, as explained in 16A J. Appleman, Insurance Law and Practice § 8836, at 64-66 (rev. ed. 1981):

> Ordinarily, of course, an agent assumes only those duties normally found in an agency relationship....and he assumes no duty to advise the insured merely by such relationship. However, where an agent holds himself out as a consultant and counselor, he does have a duty to advise the insured as to his insurance needs, particulary where such needs have been brought to the agent's attention. And in so doing, he may be held to a higher standard of care than that required of the ordinary agent since he is acting as a specialist. Accordingly, the agent may be liable to an insured for the damage suffered by his failing to inform him as to a potential source of loss and by his failing to recommend insurance therefrom.

In *RLI Insurance Company v. Wood Recycling, Inc., et al*, 2006 U.S. Dist. LEXIS 30596, (D. Mass. March 30, 2006) the Court noted "Wood has not presented evidence from which a reasonable jury could conclude that (the insurance broker) owed Wood anything beyond the usual duties of an agent." In contrast to the evidence in the case *sub judice*, the insurance broker in RLI did not claim it was a waste management and recycling insurance specialist nor did the insurance broker admit that it would review a client's waste management and recycling exposure. Here a reasonable jury has evidence showing that Flagship held itself out as a marine insurance specialist and Flagship's agents would advise ship owners as to their maritime exposure. Implicitly if not expressly this would include the level of coverage needed to protect a vessel owner's corporate assets — a practice consistent with the admitted business practice of Flagship to "systematically and comprehensively" review a fishing vessel owner's maritime risks because "protecting your corporate business risks is our primary concern." A jury should be given the opportunity to determine if Flagship did its job in its relationship with AGA.

## Conclusion

For all the reasons set forth herein this court's entry of judgment for Defendants following allowance of their summary judgment motion must be vacated and the case reinstated for trial.

Dated: August 16, 2007    The Plaintiff, AGA FISHING CORP.
By its attorney,
JOSEPH G. ABROMOVITZ, P.C.

s/Joseph G. Abromovitz
_____
Joseph G. Abromovitz
BBO No. 011420
858 Washington Street, Third Floor
Dedham, MA 02026
Phone: (781) 329-1080

## CERTIFICATE OF SERVICE

I, Joseph G. Abromovitz, counsel for the plaintiff, hereby certify that on the 16th day of August, 2007 I served a copy of the within document via electronic mail to:

Michael J. Stone
Peabody & Arnold, LLP
30 Rowes Wharf
Boston, MA 02110

s/Joseph G. Abromovitz
_____
Joseph G. Abromovitz