# United States Court of Appeals
## For the First Circuit

No. 07-2408

AGA FISHING GROUP LIMITED,

Plaintiff, Appellant,

v.

BROWN & BROWN, INC., ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Joseph L. Tauro, <u>U.S. District Judge</u>]

Before

Lynch, <u>Chief Judge</u>,
Tashima,[*] <u>Senior Circuit Judge</u>,
and Lipez, <u>Circuit Judge</u>.

<u>Joseph G. Abromovitz</u> with whom <u>Marsha A. Morello</u> and the <u>Law Office of Joseph G. Abromovitz, P.C.</u> were on brief for appellant. <u>Michael C. Stone</u> with whom <u>Terri L. Pastori</u> and <u>Peabody & Arnold LLP</u> were on brief for appellees.

July 10, 2008

---

[*] Of the Ninth Circuit, sitting by designation.

**TASHIMA, <u>Senior Circuit Judge</u>**.  Plaintiff AGA Fishing Group Limited ("AGA") was forced to sell the *Georgie J*, a scallop fishing vessel, and its scallop license to settle claims against AGA after a crewman suffered debilitating injuries aboard the vessel and recovered a substantial award under the Jones Act.  AGA was insured through Defendant Flagship Group, Limited ("Flagship"), but the seaman's award far exceeded the Protection & Indemnity ("P & I") coverage in AGA's policy, which was sold to AGA by Flagship.  AGA sued Flagship and Defendant Brown & Brown, Inc., Flagship's parent company, contending that Flagship owed it a duty to recommend an adequate level of P & I coverage and breached that duty when it did not so recommend.  The district court granted Defendants' motion for summary judgment on all claims.  Because AGA presents no facts evincing a duty on Defendants' part to ensure that AGA was adequately covered, we affirm.[1]

I.   Background

Because AGA appeals from a grant of summary judgment, in reciting the facts, we draw all reasonable inferences in favor of AGA, the non-moving party.  See <u>Ramos-Santiago v. United Parcel</u>

---

[1]   AGA also contends that Flagship breached its contract with AGA by failing adequately to evaluate AGA's risk.  Because AGA raises this argument for the first time on appeal, we decline to consider it.  See <u>United States v. Taylor</u>, 511 F.3d 87, 91 (1st Cir. 2007) ("Absent extraordinary circumstances, '[i]t is a bedrock rule that when a party has not presented an argument to the district court, [he] may not unveil it in the court of appeals.'") (alterations in original) (quoting <u>United States v. Slade</u>, 980 F.2d 27, 30 (1st Cir. 1992)).

Serv., 524 F.3d 120, 122 (1st Cir. 2008). George Jones ("Jones") started scallop fishing in New Bedford, Massachusetts, in the early 1960s, when he was fifteen years old. In 1987, he and his wife, Antonette Jones, formed AGA and purchased a scallop boat, the *Victor*, and an accompanying scallop license. Under the previous owner, the *Victor* carried $1,000,000 in P & I insurance through Neptune Mutual. After acquiring the vessel, AGA decided to stay with the same insurance company and agent, Ronald Walsh ("Walsh"), and continue the same level of coverage.

Some time later, AGA discontinued its insurance policy with Neptune Mutual and purchased a policy from Mariners Insurance. AGA continued the same level of P & I coverage after the switch. Jones assumed that the new agent would tell him if he needed more coverage. In the late 1990s, Jones discovered that his original insurance agent, Walsh, had left Neptune Insurance and was now working for Flagship. On its website, Flagship advertised itself as having "the expertise necessary to offer the appropriate insurance services for the maritime industry" and claimed to "systematically and comprehensively examine [its clients'] maritime exposures." The Joneses, however, never viewed the website. Rather, Jones liked Walsh and trusted him. Their personal relationship and the fact that Walsh quoted a lower premium for the same coverage precipitated AGA's move from Mariners Insurance to Flagship in 1999.

AGA kept the same level of P & I coverage on the vessel after moving its insurance business to Flagship, again assuming that its agent, now Walsh, would recommend additional coverage, if necessary. According to Walsh, the Joneses "didn't understand insurance" and needed a lot of guidance due to their "naive[te]." The Joneses were not highly educated. Jones left school after the sixth grade and Antonette Jones did not complete high school, although she received a GED years later. Although Walsh testified that the Joneses required more assistance than his other clients, Walsh and the Joneses never discussed the amount of P & I coverage on the vessel or whether or not the coverage was sufficient. The policy was renewed annually at the same level of coverage.[2]

In 2000, Walsh told Jones that he planned to leave Flagship and that Flagship was closing its Massachusetts office. Jones asked Walsh how to keep the *Georgie J* covered. Walsh recommended that AGA stay with Flagship. AGA remained with Flagship, and Flagship transferred the AGA account to agent John Devnew ("Devnew"). Jones was concerned that Devnew would not be able to give him the level of assistance he desired because he was based in Virginia. Devnew reassured Jones that he would "take care of them." Devnew considered Jones "simple and unsophisticated" and knew that the Joneses' entire fortune was wrapped up in AGA. Yet

---

[2] Also during this time, the Joneses' son was killed in an unrelated incident and the Joneses renamed the *Victor* the *Georgie J* in his honor.

during the time Devnew worked on the AGA account, he never discussed P & I coverage levels for the *Georgie J* with the Joneses and never recommended increasing the amount of P & I coverage on the *Georgie J*.

In or around 2001, New Bedford experienced a boom in the scallop fishing industry. Gross profits per fishing trip increased dramatically, which translated into significant pay increases for crewmen working aboard the scallop vessels. Compensation levels for individual crew members reached and then exceeded $100,000 a year. The *Georgie J* and other scallop vessels carried a five- to seven-member crew. As a result, vessels that worked out of New Bedford, including those insured by Flagship, commonly carried $5,000,000 P & I coverage. It would have cost AGA approximately $5,000 annually to increase P & I coverage for the *Georgie J* from $1,000,000 to $5,000,000. AGA avers that it would have paid the higher premium had Devnew recommended the higher level of coverage.

During a fishing trip in 2003, a crewman suffered debilitating injuries while working aboard the *Georgie J* and subsequently sued AGA. The $1,000,000 P & I coverage on the *Georgie J* was grossly insufficient to cover the damages awarded to the crewman. The U.S. Marshal seized the *Georgie J* and its scallop

license and sold it at auction in partial satisfaction of the crewman's judgment.[3]

AGA sued Flagship and Brown & Brown, Inc., its parent company. AGA claimed that Flagship breached its duty of care properly to advise AGA with regard to coverage needed for the *Georgie J* (Count I). AGA also alleged negligent misrepresentation (Count II), intentional misrepresentation (Count III), and violations of Massachusetts' unfair or deceptive trade practice law, Mass. Gen. Laws ch. 93A §§ 2(a), 11 (Counts IV and V). AGA further alleged that Brown & Brown was vicariously liable for damages caused by Flagship (Count VI) and that Brown & Brown negligently failed to supervise Flagship (Count VII).

Defendants moved for summary judgment, which the district court granted as to all claims. AGA timely appealed.[4] We have jurisdiction over the final judgment under 28 U.S.C. § 1291. In this diversity of citizenship case, we apply Massachusetts law, which the parties implicitly agree governs.

---

[3] The *Georgie J* and the license together sold for $1,700,000. The proceeds from the sale first went to pay off the mortgage, and the remainder went to the injured crewman.

[4] Nowhere in its briefs in this court does AGA challenge the district court's grant of summary judgment on Counts II through VII. We therefore consider those arguments waived and do not address those counts.

II. Discussion

We review a district court's grant of summary judgment de novo. Franceschi v. U.S. Dep't of Veterans Affairs, 514 F.3d 81, 84 (1st Cir. 2008). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

"There is no general duty of an insurance agent to ensure that the insurance policies procured by him provide coverage that is adequate for the needs of the insured." Martinonis v. Utica Nat'l Ins. Group, 840 N.E.2d 994, 996 (Mass. App. Ct. 2006). Such a duty only arises under "special circumstances of assertion, representation and reliance." Baldwin Crane & Equip. Corp. v. Riley & Rielly Ins. Agency, Inc., 687 N.E.2d 1267, 1269 (Mass. App. Ct. 1997) (quoting Rapp v. Lester L. Burdick, Inc., 146 N.E.2d 368, 371 (Mass. 1957)); see also Martinonis, 840 N.E.2d at 996 ("[I]n an action against the agent for negligence, the insured may show that special circumstances prevailed that gave rise to a duty on the part of the agent to ensure that adequate insurance was obtained.") (citing Baldwin Crane, 687 N.E.2d at 1269).

AGA alleges special circumstances due to the Joneses' lack of education, Walsh and Devnew's knowledge of their "naive[te]" and "lack of sophistication," and testimony from the

Joneses that they relied completely on Walsh and Devnew to tell them how much coverage they needed for the *Georgie J.* AGA also points to its long-term relationship with Walsh and his testimony that he was aware of the Joneses' reliance on him. Additionally, Flagship presented itself to the public as an expert in the field of maritime insurance and, through its website, attested that it "systematically and comprehensively" examined its clients' potential liabilities.

Courts have considered length of relationship a significant factor when determining the existence of special circumstances. See McCue v. Prudential Ins. Co., 358 N.E.2d 799, 801 (Mass. 1976) (determining that a jury could find special circumstances where insurance agents visited the plaintiffs monthly for twenty-eight years); Martinonis, 840 N.E.2d at 996 (noting the plaintiff's "long relationship" with her agent). An insurer's public representations of expertise or public promises to provide specialized counseling, like those found on Flagship's website, could also support, based on other facts as well, a finding of special circumstances. Baldwin Crane, 687 N.E.2d at 1269-70 ("'An expanded agency agreement, arrangement or relationship, sufficient to require a greater duty from the agent than the general duty, generally exists when the agent holds himself out as an insurance specialist, consultant or counselor . . . .'") (quoting Sandbulte v. Farm Bureau Mut. Ins. Co., 343 N.W.2d 457, 464 (Iowa 1984)).

AGA, however, has not presented facts sufficient to support a finding of special circumstances because neither Walsh nor Devnew made any representation or assertion that coverage was sufficient or that AGA could rely on them to recommend sufficient coverage. A plaintiff must be able to show a specific assertion and subsequent reliance to establish special circumstances. Assertions can come in the form of "frequent recommendations," GE HFS Holdings, Inc. v. Nat'l Union Fire Ins. Co., 520 F. Supp. 2d 231, 237 (D. Mass. 2007), a recommendation of coverage in a particular amount, Bicknell, Inc. v. Havlin, 402 N.E.2d 116, 119 (Mass. App. Ct. 1980), or assurances that coverage is sufficient, Martinonis, 840 N.E.2d at 996.

No agent made any such recommendation or representation to AGA. Jones testified that Walsh and Devnew never discussed with him the amount of P & I coverage the *Georgie J* had or should have had. No agent even recommended the $1,000,000 P & I coverage. AGA maintained the $1,000,000 P & I coverage from 1987 to 2003 simply because that was the level of coverage in place when AGA first purchased the vessel.

AGA avers that it relied on Walsh and Devnew to recommend sufficient coverage for the *Georgie J* and that the agents knew that they had to do so because the Joneses were "naive" and "unsophisticated." The Joneses, however, never asked Walsh or Devnew if the P & I coverage on the *Georgie J* was sufficient, never

asked if they would be told if coverage became insufficient, and neither Walsh nor Devnew represented that the Joneses would be informed if at some point the coverage became insufficient.

While Walsh testified that the Joneses relied on him generally, special circumstances exist only where reliance is based on an assertion or representation. Additionally, AGA did not rely on Flagship's public representations of expertise. The Joneses never saw Flagship's website; they chose Flagship because of price and their relationship with Walsh.

Because AGA has adduced no facts showing the existence of special circumstances that created a duty of care, the district court did not err in granting summary judgment in favor of Defendants on Count I of AGA's complaint.

### III. Conclusion

For the foregoing reasons, the district court's grant of summary judgment in favor of Defendants is AFFIRMED.